on behalf of Sun Hwang, who is also not present. Again, last week the court in this case issued a very helpful order asking us to come here today prepared to talk about the Kwon and Chan cases. And when I went back and read through those cases, it's clear that you didn't ask us to do that, as to whether or not we were going to do that. So I'm going to ask you to take a look at what we're doing. Whether or not Kwon was retroactive because of the timing, that doesn't apply here. But what I discerned from that is the fact that the Chan case, the Ninth Circuit Chan case, basically said that even after Padilla, the Kwon test as to whether or not somebody was affirmatively misled about the immigration consequences is still good law. And so where that leaves us then is really with three possible applicable standards. The Kwon standard of was Ms. Hwang affirmatively misled, the Padilla standard of if it's a clear law, then the advice has to be correct, or the Padilla standard of if it's an unclear law, you have to at least advise of the risk. I submit to you that the applicable standard is Padilla, clear law, correct advice. But I also submit to you that any of those three standards that I lay out, this conviction needs to be overturned. I just want to make sure I understand the facts here, so let me just ask you some questions that I want to make sure we get resolved here. Did Mr. Isaacson tell Ms. Hwang that he received information from the Defenders Initiative that she would likely be deported? He did. Where is that in the record? I believe that's in his affidavit. I believe. My understanding from his affidavit is that he received that information. He informed her of it. But he told her then because that was such a dire opinion, we should consult with a local immigration attorney who actually did develop, I guess, at that point, an attorney-client relationship. And then that attorney did tell Ms. Hwang, you know, it'll be okay. And was Mr. Isaacson aware of Ms. Del Morey's advice to Ms. Hwang that she would not be deported? Yes. He was aware of that, and in fact, one of the things he said that he told her soon before her plea was, we have this one... He knew whether he was aware of Ms. Del Morey's advice to Hwang, and he was. He was. Okay. He was, and that's why it's also in there that he said to Ms. Hwang, you have one attorney saying this, another attorney saying this, I don't know who's right. And so what did Mr. Isaacson tell Ms. Hwang after Ms. Del Morey advised Ms. Hwang? He told her, you have one attorney here on the mainland saying this, you have a local attorney saying the opposite, I don't know who's right. Well, but he also, too, beyond that, he... She knows that there's a definite possibility of this, and she also is aware the attorney tries to negotiate a misprison charge to get it lowered because of the advice that that would put her on solid ground. To not get her thrown into removal. And I have to say, I thought this attorney does more than what you usually see. And I do immigration cases, have been doing them all the time, and I don't even know panel to panel what a panel's going to do. So it's a little bit hard to say that he was ineffective for saying he goes out and gets her advice from experts, tells her she faces the possibility of that, tries to negotiate a lower charge because that would be safer for her. Now, of course, on the other hand, if he had told her she would be removed and that ended up to be wrong, then that would be a misrepresentation. So I think that's why, and I understand why maybe you're a little uncomfortable with that. A lot. Well, I think that's why we need to focus on Padilla and the test set forth in Padilla. Because it's not about, it's pretty clear in Padilla and cases like the Ninth Circuit's Rodriguez-Vega that when the immigration law is succinct and clear and explicit that conviction will lead to deportation or removal, you must advise that removal is virtually certain. Well, take out Rodriguez-Vega for me for just a second. Why isn't it enough under Padilla that Ms. Wang was aware that there was at least some risk that she would be deported in light of the conflicting information? The point of Padilla, it's hard to talk about Padilla without Rodriguez-Vega. Well, if you're dependent on Rodriguez-Vega, I would like you just not to... So Padilla says if the law is clear, immigration law is clear, you have to give correct advice. It's not enough to advise of the risk. And in this case, like I pointed out, there's two prongs to Padilla. The first is very clear. If the law is clear, you have to give correct advice. The second prong is if the law is unclear, the immigration law, then you have to advise of the risk. In this case, the law is very clear. There's an immigration statute that says if it's an aggravated felony, you will be deported. There's another immigration statute that delineates out certain crimes that are aggravated felonies, including 18 U.C. 9055, the gambling charge. So it's in a statute that says you will be deported. It's in a statute. It's that clear. It doesn't get any clearer. Under Padilla, you have to advise correctly that you will be deported. That didn't happen here regardless of any at all. That didn't happen at all. But that's where Rodriguez-Vega comes in because that's where the Ninth Circuit takes Padilla's clear law, clear advice or correct advice standard and applies it directly to the facts here. Rodriguez-Vega says when you have an immigration statute that delineates out a criminal charge that will lead to deportation, that triggers Padilla's clear law, clear advice, I mean, correct advice. Okay, but you still have to – okay, but ineffective assistance under Strickland, you have to be evaluated at the time of the sentence. And the case that you're arguing is after that. And so that United States v. Rodriguez-Vega, it didn't come after this defendant was sentenced? Yes or no? I believe it did. All right. So how could he have been ineffective because it's based on the law at the time? Right, which was Padilla. Padilla was in effect at the time. And that's why Judge Murguia was taking you back to Padilla. And so Padilla says very clearly, Padilla says if the immigration law is clear, you have to advise correctly. And the immigration law was clear. And she was not advised correctly. She was at the very least not advised at all. Was she misled? She was misled by the immigration attorney, yes, absolutely. The immigration attorney. The second immigration attorney. The second immigration attorney. She was absolutely misled. Even though the first immigration attorney, what, I'm just, you know, because this is the situation that we have, and we're trying to understand it, you know, within the Padilla sort of understanding of the law at the time. And so I'm curious, so what should, do you think, Mr. Isaacson required to do to tell, what did he needed to tell Ms. Wang to satisfy the Sixth Amendment? Under Padilla, because the law was clear, he needed to look at the statute. He would have saw that the law was clear. And then he needed to advise her that her deportation was virtually certain. He absolutely. Just at risk is not enough? Not when the law is clear. Not under Padilla. When Padilla says the law is clear, you have to give correct advice. Padilla says when the law is unclear, you can advise of the risk. That is absolutely what Padilla says. And then you do have Rodriguez-Vega, which is after the fact. But Rodriguez-Vega says when it's in a statute, the law is clear. I mean, we don't need Rodriguez-Vega to say that. That's common sense. So every time would you be able to defeat this? Let's just say the second, let's say the one that said you could get relief wouldn't have been there. He just had the one he got. He hires an immigration lawyer to say, no, you can't get relief. If the second one hadn't come in there, then would he have been adequate? If he told her that, yes, this attorney said you will be deported, I agree with that, it's virtually certain you'll be deported. All right. And then you could later then come back and find someone else that would say, no, you wouldn't have been deported, and then that would be IAC, this other person if they came in later. So he did too much. He did too much here. He got more than one opinion. He got too much. It's a matter of did he comply with it. Well, are all criminal attorneys then ineffective per se because they aren't experts in immigration law? Absolutely not. But that's what the United States Supreme Court, that's the burden they put on criminal defense attorneys. I'm a criminal defense attorney. That's a burden that is on us. And so it's our job to look up the statute, and if it's clear, advise our client accordingly. It's not a matter of deferring to an immigration attorney. That's exactly what Padilla says you can't do anymore. That's what you could do before Padilla, is you could give no advice on that. But Padilla recognizes that most of these cases nowadays end in pleas, and so if you're ineffective in that situation in misadvising somebody, that's a problem. I just want to end by saying, you know, Padilla clearly says clear law, clear advice. There was a clear law here, and there was not correct advice. And the question is, is this how we want to obtain convictions, is by telling somebody you're not following Padilla, not giving the correct advice, misleading them, adopting basically another attorney's wrong advice, and then this person who's lived there for 40 years, has no family in Korea, her son and family is here in Hawaii, you know, is going to be deported because she pled under the wrong assumption that she wouldn't be deported? Well, if she chose to, even if both of those were there and the lawyer said to her, you're going to get deported, right, then even though the other advice was there, would she later be able to, I mean, she still could hold out hope. I mean, he basically said, you can get deported, so she knew that was a risk. That's not what happened. He told her, I don't know whether you'll get deported. That's what her attorney told her, I don't know if you'll get deported. But there was an immigration attorney that he said you could rely on that said you wouldn't, and that's the problem. And so based on that, she pled. And going back, if we go back without that, she would have gone to trial. That's what's in her declaration. Let me jump ahead to one other question. I know we've taken you over your time. The district court did not reach the question of Strickland prejudice. Let's assume, let's play this out. What's your best argument on Strickland prejudice? When you look at her declaration, and there's two best arguments, it's her factual circumstances and it's the possible sentence in this case. Factually, she's been in the United States close to 40 years. She's in her 60s. Her adult son lives here. She has no ties to Korea. She came here when she was a very young woman. She's lived here all her life. Hawaii is her home. She said in her declaration the most important thing to her when she was charged was to not get deported. Keep in mind, there was a gambling enterprise and she was a cashier. She was the lowest level. She was getting paid $10 an hour. The people at the highest level in this ring got 15 months in jail. So it's not a case of like an ICE case where if you go to trial, maybe you're going to get 15, 20 years, and if you plead out, you're going to get eight. This was the difference of if she went to trial and lost, she probably would still get under a year in jail. So that's where the prejudice is. She definitely would be in the same spot, though, right, if she were convicted at trial. With all due respect, the point is she has the right to be advised accordingly so she can make that decision. It's a knowing decision. It's not a decision based on misinformation. It would have at least given her the chance. I'm not here saying the case should be dismissed or she would have won the trial. I'm here saying justice requires that as we go through this process that people be advised accordingly, and if they're going to plead, they do it knowingly, and if they're going to go to trial, they do that knowingly. And then the result is the result. And if she gets deported after losing a trial, we have no arguments. But the point is she didn't get that opportunity. You would have an argument. If she won. You would have an argument. No argument about this. Different argument. Different argument. I think we have the argument in hand. But the point is this, right? I mean, that's the biggest issue as to prejudice is you're talking about the difference of maybe a no-jail sentence or after trial, you know, a year or less. And in her declaration, absolutely she would have gone to trial if she was told, as Rodriguez-Vega and other cases say she should have been, with virtual certainty she would have been deported, she would have gone to trial. And that's where the prejudice comes from. Thank you, counsel. Thank you. Good morning. Please, the Court. Assistant United States Attorney Tom Brady on behalf of the United States. I want to direct the first thing to you, that where it is in the record is on page 76 of counsel's excerpts where clearly it states that Mr. Isaacson said that he did receive information from the mainland attorney, from the defendant's initiative of the National Immigration Justice Center, in which he conveyed to his client that she would be deportable and eligible for discretionary waiver if she pled to the 1955 charge. He immediately, the next sentence is, I informed the client of this opinion. So that is clearly on page 76 of the excerpts of records. I want to start my argument by paraphrasing Justice Alito in his concurring opinion in Padillo, and that is nothing is ever simple with immigration law, including the determination whether immigration law clearly makes a particular offense removable. And I think that is really where we're at right now. Well, I think the question is, was the law clear? I mean, under Padillo, that's the first problem, and it seems pretty clear that the statute is the statute and the offense fits within the statute. So what's unclear about that? And yet in Kwan, an immigration judge took a look at an aggregate offense and said it was not an aggregate offense. And so what I'm submitting to the court is it was not truly clear when. You have two experts in immigration law who are coming up with different conflicting opinions. Well, what's unclear in this case, though? I mean, we have AGFED cases where we have to match up elements and we have to look, and those are different from this. This is a statute that's actually cited as an aggravated felony. So what's not clear? I think that's the first step, so tell me. I agree with the court. As we sit here today, you just turn to the statute and you look at it and you see Title 18 U.S.C. 1955. It is there. But what I am suggesting to you is that this attorney was a criminal defense attorney, and he did the right thing. That's the argument in Padillo. I mean, the Supreme Court has spoken on that. I understand that argument. But, you know, it's the obligation that the Supreme Court posed on the defense attorneys, not us. And so taking what the Supreme Court has said in Padillo, I mean, and seeing that this is listed under the type of offenses that are deportable or removable, what are we supposed to do here? Because it looks like this is really hard because the defense attorney here, it seems like was trying to do everything he could and to kind of cover his basis. And we, you know, appreciate that good faith effort, you know. But here it seemed to have caused some confusion. And the Supreme Court says in Padillo if, you know, the defendant is effectively misled, you know, we hold the defense attorney responsible. I mean, and I think the point is not to hold Ms. Wang responsible. She's the one who's going to suffer the consequences. And here's why I think counsel advice was still objectively reasonable. Because what he did is he told his client immediately after hearing from the mainland expert, you will be deported with no discretionary relief if you plead to this charge. He gave her that information, and she had that information. The problem is the information that came afterwards. I mean, Ms. DeMora, who really, I mean, she wasn't just wrong. She was really wrong, okay, when she said, you know, that there's not going to be a problem. This is a crime involving moral turpitude, no problem. And it seems like the Supreme Court was rather explicit in Padillo when it said when the deportation consequence is truly clear, the duty to give correct advice is equally clear. So I'm trying to figure out why by him not circling back after DeMora. And I think that's really where we are, at least from my view. After the advice given by Ms. DeMora or, you know, consultation, he didn't circle back and say, you know what, I know what she said, but from reading it, this conviction is right under that statute. It looks like you have at least a risk of being deported. And he did tell her that? Well, not after Ms. DeMora. Well, what he did at the change of plea was this. And as he said in his declaration, at the change of plea, I turned to her and I said this. One attorney or people from the mainland are saying you're going to be deported. The person from Hawaii is saying that you may have relief. I don't know who's right. And he should have known. You are facing a risk of deportation. This is his declaration. I will take this matter to trial. But then we have also the other language in Padilla, which says when it's clear, there's an additional burden, unfortunately, for the defense attorney in this circumstance to let her know more than just a risk. And it comes back to the exact first question you asked, what is truly clear and what is not. And I certainly defer to those that are in the immigration process and they're in the immigration courts, and I'm seeing cases replete with examples of not only attorneys, but also judges that are not able to determine whether or not certain charges are truly clear. Well, sure, but that's not this case because you have a clear statute. I mean, that's the difference. I mean, we struggle from case to case if we have to interpret the statute, what elements match up, what elements don't match up in the crime. And I grant you that. But this is a little bit different. I think the question is this. If the attorney had communicated the correct advice and left it at that from the mainland, then we're not here. She's made an intelligent choice. Let's assume he didn't get any advice from the mainland at all and he communicated the incorrect advice. Then I think probably the defense wins on this case because he communicated. But now we have conflicting advice, and the question is can you immunize yourself from Strickland and Padilla by saying, I don't know, I've got two different pieces of advice. And I go back to, and the court will indulge me, the concurring opinion of Justice Alito in which in Padilla he says, reasonable, competent attorneys should know that it is not appropriate or responsible to hold themselves out as authorities on a difficult and complicated subject matter with which they are not familiar. Candor concerning the limits of one's professional expertise, in other words, is within the range of duties reasonably expected of defense attorneys in criminal cases. Well, sure. But the problem with this case, of course, from a practical point of view, is that we're sympathetic with the defense counsel. He did the right thing. And it's awfully hard to say that's ineffective assistance of counsel when you're trying to be effective and you get advice. I grant you that. But holistically, the question is, was the duty to communicate clear law met? And I don't think you can immunize yourself under Strickland by relying on somebody else. I'm not sure about that. But that's what makes this an interesting case. Well, what about the misprision? Who gave the advice on that to say that that would avoid it? I think both of the experts gave the similar advice that a misperson would have been a better something they could have dealt with in front of an immigration court. And the attorney in question here tried to get that, but the prosecutor wouldn't give it to him. That is correct. And, again, this is one of the distinctions between this case and the Chan case, is that in the Chan case, there was renegotiations back and forth with what she would plead to. And in this case, that's not present. So there really isn't an effort by this defendant to try some other way of going forward other than pleading as charged or going to trial. So I guess just one last, because I'd like to see what your response is to the Supreme Court statement, because under these circumstances, this is the struggle, I think, for me and perhaps for the panel. And you quoted from Judge Alito, but the Supreme Court actual opinion in Padilla said that when the deportation consequence is truly clear, the duty to give correct advice is equally clear. So argue, if you could, in your last seconds here, why you think the defense attorney here was clear. The obligation to give advice is limited to those circumstances that are truly clear. And I know the court has already said, well, it is truly clear. I think that standard isn't met when you have two immigration expert attorneys that are telling you conflicting things. I think it's not truly clear. Even though the law, when you read the statute in the book, says it's clear? In isolation, it's clear. But as all attorneys know, when you read things in context with other things, and that's part of the concurring opinion by Justice Alito, is that it is not so clear. But when you read it in isolation, yes, it is clear. But attorneys rarely do that, and they know there are other implications. And when you read it in context, that's where we have problems. Any further questions? Thank you, counsel. Thank you. We'll give you two minutes for rebuttal. Thank you. First of all, if it's not clear when it's delineated in a statute that this is an aggravated felony, then there would never be a situation where a law is clear. It doesn't get any clearer than this. To say that because there's two attorneys and one, and they disagree, maybe one was just entirely ineffective, which is the case here. That doesn't make the law unclear. That makes the second immigration attorney entirely ineffective. And that's not Mr. Isaacson's fault. I don't mean to say that that was his fault. It doesn't get any clearer than that. And for the government to stand up here and say when it says it in plain language in the statute that this is an aggravated felony, 18 U.S.C., 1955, it doesn't get any clearer. And I'm surprised that the government would stand up here and try and say somehow that's not clear. They try to say that because they know under Padilla, when it's clear, you have to give correct advice. And regardless of what we think of Mr. Isaacson and what he did, whether it's his fault or not, whether he exercised due diligence or not, at the end of the day, he didn't give correct advice. And that's a problem under Padilla. Well, not give correct advice when at the change of plea hearing, he does say to his client, we have two lawyers saying two different things, but there's a risk. That is not correct advice. That's the unclear law, advise of the risk prong standard. Correct advice would be this is an aggravated felony. Deportation is virtually certain. One thing I want to quickly point out, as you mentioned the change of plea colloquy, there was this e-mail from some immigration, I guess, nonprofit on the mainland. But what he did after, he had Ms. Huang consult with and meet with Ms. Dio Marcia. And he even himself believed that to be more reliable because in the change of plea colloquy, in our brief, when the court asked about the immigration, are you aware of the immigration consequences, Mr. Isaacson chimed in and said, Your Honor, if I may, for the record, I would like the record to reflect that at my urging, my client has consulted with an immigration attorney, Carmen Dio Marcia, here in Honolulu, in order to better ascertain the immigration consequences. She has consulted with her and have talked to Ms. Dio Marcia, and she's trying her best to comply with the requirements. So he's punting the PDO requirements onto Ms. Dio Marcia, not the mainland nonprofit that just sent an e-mail and never met Ms. Huang. So Mr. Isaacson himself is putting more emphasis on the relationship and advice from Ms. Dio Marcia. Which is not really a bad thing. I mean, in the scheme, it turned out to be bad advice. And again, I don't fault Mr. Isaacson for that, for having him do that. I do, frankly, fault him for not reading the statute. And I'm not here to say anything bad about anyone, but he did everything he could except read the statute. I mean, he reached out to two immigration attorneys, but if you read the statute, it's perfectly clear. And one immigration office on the mainland got it right, and another one down here was completely ineffective and gave the wrong information. And at the change of plea colloquy, Mr. Isaacson deferred to the one that gave the wrong advice. And that's a problem. And again, I come back to, sure, we have sympathy for Mr. Isaacson, and we don't want to say he's ineffective because he did try. Now, he didn't say affirmatively, we think that the better view is that she will get relief. He did not say that. He said, and what's in his declaration is he says he understands it to be where he didn't give her any advice because he didn't know which one to believe. And so that doesn't meet the Padilla clear law correct advice. No advice is not correct advice. It doesn't have to be wrong advice. It has to be correct advice. That's what Padilla deals with. We're beyond the days when you could give no advice. And is that hard on criminal defense attorneys? Absolutely. Absolutely. But that's what the Supreme Court says is our duty, and it is what it is. And the sympathy we have for Mr. Isaacson trying his best, which he did, I would submit the sympathy for Ms. Wang, who is now facing deportation to a country she hasn't lived in in 40 years, based off of pleading under a wrong belief, I would submit that the sympathy for her should be greater and that justice should require that that conviction be set aside. And at least we start over and go about this in a way where she's informed and can make decisions accordingly. Thank you. Thank you, counsel. Thank you both for your arguments today. Aces heard will be submitted for decision.
judges: Thomas, Callahan, Murguia